UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

TEXTRON FINANCIAL CORPORATION,
    Plaintiff,

v.                                                    C.A. No. 09-617ML

SHIP AND SAIL, INC., CHRISTINE M.
FOULKROD, DANIEL P. FOULKROD,
DAVID P. FOULKROD, ROBERT E.
CHAMBERLAIN, JR., EUGENE L.
BUTLER, and RONALD E. SMITH,
    Defendants.

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Or, Alternatively, to Transfer. For the reasons set forth below, Defendants' Motion is DENIED.

### I.   FACTS AND TRAVEL

This case involves a contract dispute between Textron Financial Corporation ("Plaintiff") and Defendants. Plaintiff is a Delaware corporation with its principal place of business in Providence, Rhode Island. Defendant Ship and Sail, Inc. is a commercial dealer of sailboats and motor yachts. Ship and Sail, Inc. is a Texas corporation with its principal place of business in Kemah, Texas. Defendants David Foulkrod, Daniel Foulkrod, Christine Foulkrod, Robert Chamberlain Jr., Eugene Butler, and Ronald Smith are Texas residents and either current or former corporate officers of Ship and Sail, Inc.

On or about May 19, 2005, Plaintiff and Ship and Sail, Inc. executed the Wholesale

1

Security Agreement and Finance Plan, thus entering into a financial arrangement under which Plaintiff would finance Ship and Sail Inc.'s purchase of boats and Ship and Sail, Inc. would grant Plaintiff a security interest in those boats. David Foulkrod, Daniel Foulkrod, and Christine Foulkrod individually signed personal Guarantees, under which they guaranteed prompt payment and performance of all of Ship and Sail, Inc.'s obligations to Plaintiff under the Wholesale Security Agreement.

In February 2008, Smith, Butler, and Chamberlain became officers of Ship and Sail, Inc. On or about June 4, 2008, Plaintiff and Ship and Sail, Inc. entered into a new financing arrangement under the Credit and Security Agreement. Smith, Butler, and Chamberlain individually signed personal Guarantees, which guaranteed prompt payment and performance of all of Ship and Sail Inc.'s obligations to Plaintiff under the Credit and Security Agreement.

On August 31, 2009, Plaintiff sent a notice of default to Ship and Sail, Inc. Plaintiff contends that as a result of Ship and Sail Inc.'s default, all "sums outstanding under the Ship and Sail Loan Documents [were] accelerated and immediately due and payable" to Plaintiff. Compl. ¶ 18. Defendants allege that on October 8, 2009, Ship and Sail, Inc. surrendered and tendered to Plaintiff 17 boats that had been financed by Plaintiff. Defendants claim that Plaintiff took possession of those boats on October 16 and 17, 2009.

On December 22, 2009, Plaintiff filed this Complaint alleging – Breach of Contract against Ship and Sail, Inc. (Count I), and Actions on the Guaranties against Christine Foulkrod (Count II), Daniel Foulkrod (Count III), David Foulkrod (Count IV), Robert Chamberlain, Jr. (Count V), Eugene Butler (Count VI), and Ronald Smith (Count VII). Plaintiff seeks $6,770,456.93 in principal, $292,644.11 in interest, late fees, repossession costs, and attorneys

fees.

## II. STANDARD OF REVIEW

The plaintiff bears the burden of establishing personal jurisdiction over Defendants. Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008). The Court makes this determination under one of three standards of review – the "prima facie" standard, the "preponderance" standard, or the "likelihood" standard. Women & Infants Hosp. of R.I. v. Cmty. Health Network of Conn., Inc., 394 F. Supp. 2d 488, 490 (D.R.I. 2005). The "most commonly used" method of determining a motion to dismiss for want of personal jurisdiction is the prima facie standard. See Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992). Where the "proffered evidence is conflicting and the record is rife with contradictions," the court may require the plaintiff to establish more than a prima facie showing by applying either the "preponderance" standard or the "likelihood" standard. Boit, 967 F.2d at 676.

Because, for the most part, the pertinent facts here are not in dispute, the Court applies the prima facie evidence standard. Under this standard, the Court "draw[s] the facts from the pleadings and the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff." Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). The Court "then add[s] to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Mass. Sch. of Law at Andover v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).

## III.   DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. A federal court has personal jurisdiction over a defendant where (1) the "mandates of the forum state's long-arm statute have been satisfied," and (2) "the defendant has been hailed into the particular court in accordance with the due process clause of the Fourteenth Amendment to the United States Constitution." Russell v. Enterprise Rent-A-Car Co. of Rhode Island, 160 F. Supp. 2d 239, 249 (D.R.I. 2001) (quoting Levinger v. Matthew Stuart & Co., 676 F. Supp. 437, 439 (D.R.I. 1988)). Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33, provides for the exercise of personal jurisdiction to the fullest extent permitted under the United States Constitution. Donatelli v. Nat'l Hockey League, 893 F.2d 459, 461 (1st Cir. 1990). The Court must therefore determine whether exercising jurisdiction over Defendants comports with Due Process.

### A.   Due Process

Due Process requires that Plaintiff establish "minimum contacts" between Defendants and the forum state such that maintaining the action "does not offend 'traditional notions of fair play and substantial justice.'" In't Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Here, Defendants argue that they did not have sufficient minimum contacts with Rhode Island to support either general or specific jurisdiction. Defendants emphasize that the contracts were negotiated, executed, and performed outside of Rhode Island; any breach of the contracts would have occurred in Texas; and any collateral subject to the contracts would be located in Texas, not in Rhode Island.

In response, Plaintiff argues that Defendants expressly consented to personal jurisdiction

in Rhode Island. Absent such consent, Plaintiff acknowledges that it could not establish personal jurisdiction over any of Defendants.

**B.     Consent to Rhode Island Jurisdiction**

Plaintiff argues that Defendants' Motion to Dismiss should be denied because each Defendant expressly consented to jurisdiction in Rhode Island. "[P]ersonal jurisdiction protects an individual's liberty interest," therefore, it "can be waived like other rights of that type..." Microfibres, Inc. v. McDevitt-Askew, 20 F. Supp. 2d 316, 322 (D.R.I. 1998)(citing Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702-03 (1982)). More specifically, a Defendant may waive the right to challenge personal jurisdiction by entering into a contract that contains a valid and enforceable forum selection clause. Microfibres, 20 F. Supp. 2d at 322 (holding that defendant consented to jurisdiction by entering into contract with forum selection clause, even though Court did not otherwise have personal jurisdiction); National Equipment Rental Ltd. v. Szukhent, 375 U.S. 311, 316 (1964)("parties to a contract may agree in advance to submit to the jurisdiction of a given court.")

Here, all of the Contract and Guarantee documents contain a forum selection clause. The Wholesale Security Agreement expressly states –

> EACH OF THE PARTIES HERETO CONSENTS TO THE NON-EXCLUSIVE JURISDICTION OF THE RHODE ISLAND COURTS IN CONNECTION WITH THE RESOLUTION OF ANY DISPUTES CONCERNING THE MATTERS CONTEMPLATED HEREIN.

Plaintiff's Exhibit 1 ¶ 13. The Credit and Security agreement states that "Debtor consents to the exclusive jurisdiction of the Courts of the State of Rhode Island, sitting in Providence, Rhode Island, and the United States District Court for the District of Rhode Island for all purposes in

connection with this Agreement." Plaintiff's Exhibit 3 ¶ 16. Finally, the individual personal Guaranties signed by all six individual Defendants expressly state that "Guarantor consents to the jurisdiction and venue of Rhode Island Courts..." Plaintiff's Exhibit 4-9 ¶ 6.

It is clear from the face of the Wholesale Security Agreement, Financing Plan, Credit and Security Agreement, and all six personal Guarantees, that each contains a forum selection clause subjecting the parties to jurisdiction in Rhode Island. Defendants, however, argue that the forum selection clauses are not enforceable.

### 1. Permissive Language

First, Defendants argue that the forum selection clause in the Wholesale Security Agreement should be disregarded because it contains "permissive" language – "Each of the parties hereto consents to the *non-exclusive* jurisdiction of the Rhode Island Courts...." Plaintiff's Exhibit 1 ¶ 13 (emphasis added). Permissive forum selection clauses, often containing the term "non-exclusive," "authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere..." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 17 (1st Cir. 2009). In contrast, mandatory forum selection clauses contain "clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum." Id.; see also Action Corp. v. Toshiba Am. Consumer Prods., Inc., 975 F. Supp. 170, 176 (D.P.R. 1997) (mandatory terms include "shall," "exclusive," "only," and "must.").

While the First Circuit has emphasized that a mandatory forum selection clause carries a "strong presumption of enforceability," Defendants fail to cite authority that requires this Court to disregard a permissive forum selection clause in its entirety. Rivera, 575 F.3d at 17. Moreover, the Court recognizes that the agreements contain both mandatory and permissive forum selection

clauses -- the Wholesale Security Agreement contains the permissive term "non-exclusive," while the Credit and Security Agreement contains the mandatory term "exclusive." Plaintiff's Exhibits 1 ¶ 13; 3 ¶ 16. In light of that fact, the Court rejects Defendants' argument that the permissive forum selection clause should be disregarded.

2.  **Reasonableness of the Forum Selection Clauses**

Next, Defendants argue that the forum selection clauses should not be enforced because they are unreasonable under the circumstances. Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." D'Antuono v. CCH Computax Systems, Inc., 570 F. Supp. 708, 711 (D.R.I. 1983)(quoting Bremen v. Zapata Off-Shore Co., 4047 U.S. 1, 15 (1972)). Defendants must meet "a heavy burden of proof" to successfully demonstrate that the forum selection clause is unreasonable. Id.

To make this reasonableness determination, courts consider a number of factors --

> (1) the identity of the law that governs the construction of the contract; (2) the place of execution of the contract(s); (3) the place where the transactions are to be performed; (4) the availability of remedies in the designated forum; (5) the public policy of the initial forum state; (6) the location of the parties, the convenience of prospective witnesses, and the accessibility of evidence; (7) the relative bargaining power of the parties and the circumstances surrounding their dealings; (8) the presence or absence of fraud, undue influence (or other extenuating) circumstances; and (9) the conduct of the parties.

Russo v. Ballard Med. Prods., 352 F. Supp. 2d 177, 181 (D.R.I. 2005)(citing D'Antuono, 570 F. Supp. at 712). "While each of these factors has some degree of relevance and some claim to weight, there are no hard-and-fast rules, no precise formulae. The totality of the circumstances, measured in the interest of justice, will -- and should -- ultimately control." D'Antuono, 570 F. Supp. at 712.

With regard to these factors, Defendants emphasize that none of the agreements were signed, performed, or allegedly breached in Rhode Island, and that all witnesses are likely to be located in Texas. In response, Plaintiff argues that Defendants voluntarily entered into a significant commercial transaction with Plaintiff, a corporation with its principal place of business in Providence, Rhode Island, and signed a series of agreements containing forum selection clauses.

The Court finds that Defendants have not met their heavy burden here. Defendants have not alleged the presence of fraud or undue influence, nor have they disputed that Rhode Island has a public interest in providing a forum for its resident corporations to enforce their contractual rights. Given that sophisticated parties willingly signed the unambiguous forum selection clauses in all agreements, Defendants have not overcome their heavy burden of proof necessary to demonstrate that the forum selection clauses are unreasonable.

### 3. Ambiguity and Inconsistency

Finally, Defendants argue that the forum selection clause in the Guaranties is ambiguous. The Court disagrees. Each Guaranty states that the "guarantor consents to the jurisdiction and venue of Rhode Island Courts." There are no ambiguities in that express statement.

Defendants also argue that the forum selection clauses should not be enforced because they are inconsistent. While the clauses use somewhat different language, each clause clearly provides for consent to jurisdiction in the State of Rhode Island.

Given the Court's conclusion that Defendants' attacks on the forum selection clauses lack merit, the Court finds that Defendants consented to personal jurisdiction in Rhode Island. Accordingly, Defendants' Motion to Dismiss is denied.

## IV. DEFENDANTS' MOTION TO TRANSFER

Defendants alternatively request that the Court transfer this action to the United States District Court for the Southern District of Texas, pursuant to 28 U.S.C. § 1404(a). Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Plaintiff argues that Defendants should be precluded from arguing that Rhode Island is an inconvenient forum, because they consented to jurisdiction in Rhode Island. Courts have found, however, that "[b]ecause § 1404(a) is governed largely by convenience, and pivots on a different fulcrum than § 1406(a), ... even the presence of a valid and enforceable forum selection clause does not estop a federal court in the contractually-appointed forum from ordering a convenience-type transfer to another district under §1404(a)." D'Antuono, 570 F. Supp at 711 (citing Plum Tree, Inc. v. Stockment, 488 F.2d 754, 757 n.6. (3d Cir. 1973)).

Although a valid forum selection clause does not estop this Court from granting Defendants' Motion, a forum selection clause "will be a significant factor that figures centrally in the District Court's calculus." Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12-13 (1st Cir. 2009)(quoting Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda., 906 F.2d 45, 51 (1st Cir. 1990)). Not only is the forum selection clause a significant factor that weighs against Defendants' Motion to Transfer, but there is also a "strong presumption in favor of the plaintiff's choice of forum." Id.

Defendants may overcome that strong presumption only when "the private and public interest factors clearly point toward trial in the alternative forum." Paradis v. Dooley, 774 F. Supp

9

79, 82 (D.R.I. 1991)(quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981)). The private factors include

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Paradis, 774 F. Supp at 82 (quoting Gilbert, 330 U.S. 501, 508 (1947). The public factors include

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Id. (quoting Gilbert, 330 U.S. at 509).

Defendants argue that in light of both the private and public factors, the Court should transfer the action to the United States District Court for the Southern District of Texas. While the Court recognizes that the majority of witnesses and documents are likely located in Texas, those facts alone do not overcome the presumption in favor of Plaintiff's choice of forum. Rather, the Court finds that Defendants entered into the agreements with the full understanding that any disputes would be litigated in Rhode Island, regardless of where the majority of the evidence was. Moreover, Defendants cannot argue that transferring this action would avoid conflicts of laws, because the contracts and guarantees contain Rhode Island choice of law provisions.

Based on the totality of circumstances, the § 1404(a) factors weigh in favor of keeping this case in the District of Rhode Island. Accordingly, Defendants' Motion to Transfer is denied.

## V. CONCLUSION

For the abovementioned reasons, this Court finds that Defendants consented to personal

jurisdiction in Rhode Island and that this action should not be transferred to the United States District Court for the Southern District of Texas. Accordingly, Defendants' Motion to Dismiss, Or, Alternatively, to Transfer is DENIED.

SO ORDERED.

*Mary M. Lisi*

Mary M. Lisi
Chief United States District Judge
May 11, 2010